UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re ENZO BIOCHEM DATA SECURITY
LITIGATION,

**MEMORANDUM AND OPINION**
CV 23-4282 (GRB) (AYS)

------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

Before the Court are competing motions for the appointment of interim lead counsel in this consolidated consumer class action in which Plaintiffs allege, inter alia, violations of Section 349 of the New York General Business Law ("NYGBL"), as well claims for negligence, negligence per se, breach of contract, and unjust enrichment. The movants are as follows: (1) Plaintiffs Eliana Epstein, Tony Johnson, Nino Khakhiashvili, Marie Netrosio, Steven Griffin, Mark Guthart, and Jeffrey Abraham (collectively, the "Epstein Movants"); (2) Plaintiffs Paula Magnani, Izza Hafeez Shah, and Marjorie Weinman (collectively, the "Magnani Movants"); (3) Plaintiff Melanie Wohl ("Wohl"); (4) Plaintiff Margo Kupinska ("Kupinska"); and, (5) Plaintiffs Gita Garfinkel and Dorinda Bynum (collectively, the "Garfinkel Movants"). For the following reasons, the Magnani Movants' motion for appointment of interim class counsel is granted and the motions by the Epstein Movants, Wohl, Kupinska, and the Garfinkel Movants for such appointment are denied.

BACKGROUND

Plaintiff Eliana Epstein ("Epstein") commenced this consumer class action on June 9, 2023, asserting claims for negligence, negligence per se, breach of contract, unjust enrichment, and violation of Section 349 of the NYGBL by Defendants, Enzo Biochem, Inc., Enzo Clinical Labs, Inc., and Lab Corporation of America Holdings (collectively, "Defendants"). Epstein

1

alleges that Defendants' computer systems were inadequately protected, allowing for a cyberattack that resulted in a data breach of sensitive personal information in the possession of Defendants. (Epstein Compl. ¶ 1.)

Since the filing of Epstein's Complaint, eighteen more putative class actions have been filed in this District, each alleging similar facts. All eighteen pending actions have been consolidated into the initial action commenced by Epstein, which has been designated the Lead Action. (Docket Entry ("DE") [25].) Citation to the facts alleged herein will be to Epstein's Complaint.

Defendant Enzo Biochem, Inc. ("Enzo") is a global molecular diagnostics company that integrates clinical laboratories, life sciences and intellectual property. (Compl. ¶ 24.) As part of their business, Enzo receives and maintains protected health information and other sensitive information of thousands of customers, assuring customers that they make every reasonable effort to protect the information collected. (Id. ¶¶ 4, 25, 27.)

On April 6, 2023, Enzo identified a ransomware attack on its computer network. (Id. ¶ 42.) According to the May 31, 2023 breach notice (the "Breach Notice") Enzo distributed, an "investigation determined that an unauthorized party accessed files on [its] systems between April 4, 2023 and April 6, 2023." (Id. and Ex. A, annexed thereto.) The information accessed by the cyberattack included customers' names, Social Security numbers, dates of service, and clinical test information. (Breach Notice, Ex. A.) Enzo began notifying customers of the data breach on or about May 31, 2023. (Id. ¶ 44.)

Epstein commenced the first filed action in this district on June 9, 2023. As stated above, eighteen more actions have been filed to date. The Epstein Movants' motion for appointment as interim lead counsel was filed on June 15, 2023. (DE [7].) On July 10, 2023, Judge Brown

2

consolidated all of the then-pending actions and designated the Epstein action as the Lead Action. (DE [25].) Judge Brown further directed that any additional motions for appointment of interim lead counsel be filed by July 10, 2023. (Id.) The remaining movants filed their motions that same day. (DE [27], [28], [29], [31].) Pursuant to Judge Brown's Individual Rules, as non-dispositive motions, the within motions for appointment of interim lead counsel are automatically referred to the undersigned for decision. The Court now turns to the merits of the motions.

## DISCUSSION

I.  Legal Standard

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "The appointment of interim lead counsel, among other things, clarifies responsibility for the protection of the interests of the putative class during pre-certification motions, discovery, and settlement activity." Pearlman v. Cablevision Sys. Corp., No. 10-CV-4992, 2011 WL 477815, at *2 (E.D.N.Y. Feb. 1, 2011) (citing Manual For Complex Litigation (Fourth) § 21.11 (4th ed. 2004)). In selecting interim class counsel, courts look to the criteria set forth in Rule 23(g)(1)(A) to determine the adequacy of class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and, (iv) the resources counsel will commit to representing the class. See In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig., No. 12-cv-6224, 2013 WL 3816597, at *10 (E.D.N.Y. July 22, 2013). This determination is based on "an analysis of class counsel's qualifications and experience in

3

general (including in representing classes and in similar lawsuits)[,] as well as a fact-specific analysis of the conduct of counsel in the lawsuit in which a class is to be certified and the resources counsel will commit to representing the class." Huer Huang v. Shanghai City Corp., 459 F. Supp. 3d 580, 596 (S.D.N.Y. 2020).

In addition to the four factors set forth in Rule 23(g)(1)(A), a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). These include: "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel, . . . as well as whether counsel are qualified and responsible, . . . [whether] they will fairly and adequately represent all of the parties on their side, and . . . [whether] their charges will be reasonable." In re Bank of Am. Corp. Securities, Derivative and ERISA Litig., 258 F.R.D. 260, 272 (S.D.N.Y. 2009) (citation and internal quotation marks omitted) (alterations in original). Furthermore, courts may consider whether the proposed counsel is sufficiently diverse to reflect the composition of the class. See, e.g., In re J.P. Morgan Chase Cash Balance Litig., 242 F.R.D. 265, 277 (S.D.N.Y. 2007) (stating that "it is important to all concerned that there is evidence of diversity, in terms of race and gender, of any class counsel [the court] appoint[s]"); but see Martin v. Blessing, 571 U.S. 1040, 403 (2013) (stating that it "seems quite farfetched to argue that class counsel cannot fairly and adequately represent a class unless the race and gender of counsel mirror the demographics of the class"). Although diversity is not a factor that is outcome-determinative, "the intuition underlying the diversity criterion is soundly grounded in the Court's obligation to select counsel who will best represent the interests of the class." City of Providence v. AbbVie Inc., 20-cv-5538, 2020 WL 6049139, at *6-7 (S.D.N.Y. Oct. 13, 2020).

4

II.      <u>Appointment of an Executive Committee</u>

Several movants herein – the Epstein Movants, the Magnani Movants, and the Garfinkel Movants – advocate for the appointment of an executive committee to support interim lead counsel. Executive committees "are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." <u>Manual</u>, § 10.221. Under such circumstances, "[t]he court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately." <u>Id.</u> However, "[c]ommittees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses." <u>Id.</u>; see also <u>Duke Guidelines</u> at 33 (noting that a court should consider establishing an executive committee "if the litigation involves numerous complex issues, if there is a substantial amount of work to be done, or if the plaintiffs have different interests that require separate representation").

At this stage of the litigation, this Court finds that appointing an executive committee is neither necessary nor beneficial to the interests of the class in this case. The Epstein Movants, the Magnani Movants and the Garfinkel Movants have not demonstrated that the interests of the class diverge or are dissimilar. The consolidated action is comprised of lawsuits with substantively identical common law and state consumer law claims. Although the factual circumstances of this consolidated action involve a massive cyberattack, and subsequent data breach, the legal theories and claims are not so complex as to warrant an executive committee in addition to interim lead counsel.

The Epstein Movants, the Magnani Movants and the Garfinkel Movants have also failed to demonstrate that the interests of efficiency and judicial economy are best served by appointing an executive committee. While all of the movants in favor of an executive committee tout their proposed members' abilities to perform non-duplicative work consistent with their expertise and talents, none have established a true need for such a committee in this consolidated action. Rather, they simply assert that district courts routinely establish such committees in cases of this magnitude. The Court finds such reasoning insufficient.

Taking into consideration that committees can lead to substantially increased costs and the duplication of work, the Court finds it unnecessary to appoint an executive committee herein. Accordingly, those portions of the motions made by the Epstein Movants, the Magnani Movants, and the Garfinkel Movants wherein the creation of an executive committee is sought are denied.[1]

III.   Application of the Rule 23(g)(1)(A) Factors to Each of the Movants

As set forth above, the factors the Court considers are: (1) the work performed by counsel in identifying or investigating potential claims; (2) counsel's experience handling class actions and other complex litigation; (3) counsel's knowledge of the applicable law; and (4) counsel's resources.  See In re HSBC Bank, 2013 WL 3816597, at *10. As outlined in their motions, all of the movants have completed various tasks to advance the interests and litigation strategies of the class. The Court, however, assesses each firm equally under this factor since the instant action arose after Enzo notified customers of the data breach via the Breach Notice. While certain

---

[1]   The Court's determination on this issue should not detract from the abilities or qualifications of the proposed executive committee attorneys. Rather, the Court simply does not "believe it is appropriate to establish a formal and potentially inflexible leadership structure without good cause." In re 5-Hour Energy Mktg. & Sales Practices Litig. Bruce Pettway v. Innovation Ventures, LLC, No. MDL 13-2438, 2013 WL 12134144, at *3 (C.D. Cal. Nov. 8, 2013). Plaintiffs should bring this matter back to the Court's attention at a later time if they find it necessary to establish a more extensive leadership structure as this case progresses.

6

movants have expended additional resources in an effort to develop Plaintiffs' claims, the claims asserted in the consolidated action derive from the Breach Notice issued by Enzo. Since none of the Plaintiffs filed a claim prior to the Breach Notice, this Court places little weight on the sequence of filings in this action. The Court also places equal weight on the tasks completed by the firms to identify and investigate the claims.

The Court is satisfied that each of the movants seeking appointment as interim lead counsel possesses the necessary experience handling class actions, complex litigation, and the types of claims alleged in this action. Likewise, the Court finds that the movants all possess the requisite knowledge of class actions to serve effectively as interim lead counsel. As outlined in their motions, each movant has demonstrated varying levels of success and leadership roles in class actions. However, the Court finds that greater weight should be given to those movants with experience litigating matters concerning data breaches, as well as those attorneys who have served as lead counsel numerous times.

Lastly, with respect to the resources that the movants will likely commit to representing the Plaintiffs, the Court finds that each movant can adequately serve as interim class counsel. The movants have assured the Court that they are able to devote the necessary resources to this action and are comprised of a sufficient number of attorneys, staff members, and offices. The Court places equal weight on its assessment of the resources the movants may expend to represent the class.

With respect to the additional factors the Court may consider, including whether the movants are sufficiently diverse to reflect the composition of the class, see In re J.P. Morgan Chase, 242 F.R.D. at 277, the Court is persuaded that the movants each consist of a diverse

group of attorneys and are committed to the promotion of diversity through leadership positions in various minority lawyer associations and outreach efforts.

IV.     Appointment of Interim Class Counsel

"Where there are multiple lead counsel applicants, and each are 'adequate' as evaluated under the criteria enumerated in Rule 23(g)(1)(A), 'the court must appoint the applicant best able to represent the interests of the class.'" Deangelis v. Corzine, 286 F.R.D. 220, 223 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 23(g)(2)). Having considered the five movants' respective applications, supporting briefs and exhibits, as well as the Rule 23(g) factors, this Court selects the Magnani Movants' choice of counsel – James J. Pizzirusso ("Pizzirusso") of Hausfield LLP and Jean S. Martin ("Martin") of Morgan & Morgan Complex Litigation Group – as interim co-lead counsel herein.

All movants demonstrate impressive records of experience and success in prosecuting class action claims, including serving in leadership positions in class actions. The Court, however, must consider both the credentials and structure of counsel when determining the appointment of interim class counsel. The Magnani Movants' choice of counsel consists of only two lawyers – which this Court finds preferable since it will keep costs down – who, together, have served as lead counsel or co-lead counsel in approximately twenty previous cases, at least five of which were data privacy litigations. As such, Pizzirusso and Martin possess the requisite knowledge and experience of data privacy class actions to effectively represent Plaintiffs herein. Moreover, at least three plaintiffs thus far have chosen Pizzirusso and Martin as their lead counsel – the Magnani Movants – and three others endorse their application – Plaintiffs Shana McHugh, Kathryn Mortensen, and James Murray. (Magnani Movants Mem. of Law in Supp. 1.) Taking all of the foregoing into account, the Court finds that Pizzirusso and Martin are best able

to represent the interests of the class and hereby appoints Pizzirusso and Martin as Interim Co-Lead Counsel in this action.

## CONCLUSION

For the foregoing reasons, the Magnani Movants' motion for appointment of interim class counsel is granted in part and denied in part and the motions by the Epstein Movants, Wohl, Kupinska, and the Garfinkel Movants for such appointment are denied. As previously directed by Judge Brown, Plaintiffs shall file a Consolidated Amended Complaint within forty-five days of the date of this Order. (DE [25].)

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2022

      /s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge