# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ENZO BIOCHEM DATA SECURITY LITIGATION <br><br> This Document Relates To: All Cases | Lead Case No.: 2:23-4282 |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND DIRECTION OF CLASS NOTICE

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

TERMS OF THE SETTLEMENT ............................................................................................... 4

ARGUMENT ............................................................................................................................... 6

    I.    The Settlement Merits Preliminary Approval ................................................................. 6

        A.   Legal Standard for Preliminary Approval of a Settlement ............................................. 6

        B.   The Settlement Is Procedurally Fair ............................................................................. 7

        C.   The Settlement Is Substantively Fair ............................................................................ 8

           1.   The Settlement Provides Significant Relief Particularly in Light of Best Possible Recovery and the Attendant Risks of Litigation ................................................................. 9

           2.   The Complexity, Expense, and Likely Duration Litigation ..................................... 11

           3.   The Stage of the Proceedings ................................................................................... 12

           4.   The Risks of Establishing Liability and Damages .................................................... 13

           5.   The Risk of Maintaining Class Action Status Through Trial .................................... 14

    II.   Certification of the Settlement Class Is Appropriate ....................................................... 15

        A.   Rule 23(a) Is Satisfied .................................................................................................. 15

        B.   Rule 23(b)(3) Certification Requirements Are Satisfied ............................................. 17

    III.  The Court Should Approve the Proposed Notice Plan ..................................................... 18

    IV.  The Court Should Appoint the Named Plaintiffs as Class Representatives and Appoint Interim Class Counsel as Class Counsel for the Settlement Class ........................................... 19

    V.   Proposed Schedule for Final Fairness Hearing ............................................................... 19

CONCLUSION ........................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adlouni v. UCLA Health Systems Auxiliary*,
    BC589243 (Cal. Super. Ct.) ...................................................................................19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................15

*In re Anthem, Inc. Data Breach Litig.*,
    15-MD-02617-LHK, 2018 WL 3872788 (N.D. Cal. Aug. 15, 2018) .....................18

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .............................................................11, 13, 14

*Atkinson et al. v. Minted, Inc.*,
    No. 3:20-cv-03869 (N.D. Cal.) ............................................................................19

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche*
    *Bank*, 236 F.3d 78 (2d Cir. 2001) .............................................................7, 11, 12

*Authors Guild v. Google, Inc.*,
    No. 05 CIV. 8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009) ...................8

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2d Cir. 2001) ..................................................................................7

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................................10

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 CIV. 2207 (JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...............15

*In re Brinker Data Incident Litig.*,
    No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .............15, 16, 17

*Browning v. Yahoo! Inc.*,
    No. C04-01463HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ....................10

*Campbell v. Facebook Inc.*,
    No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*,
    951 F.3d 1106 (9th Cir. 2020) .............................................................................14

*Capsolas v. Pasta Res. Inc.*,
    No. 10-CV-5595 (RLE), 2012 WL 1656920 (S.D.N.Y. May 9, 2012) ....................8

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
 No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ...................................14

*Charron v. Pinnacle Grp. N.Y. LLC*,
 874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731
 F.3d 241 (2d Cir. 2013)..............................................................................................14

*Choi v. Mario Badescu Skin Care, Inc.*
 (2016) 248 Cal. App. 4th 292 ....................................................................................19

*In re Citigroup Inc. Bond Litig.*,
 296 F.R.D. 147 (S.D.N.Y. 2013) ................................................................................8

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974).................................................................................8, 9, 12, 14

*Cochran et al. v. The Kroger Co.*,
 No. 5:21-cv-01887 (N.D. Cal.) ...................................................................................19

*Coopers & Lybrand v. Livesay*,
 437 U.S. 463 (1978)..................................................................................................15

*Corona v. Sony Pictures Ent'mt, Inc.*,
 No. 14-cv-09600-RGK (C.D. Cal. 2016)....................................................................10

*D'Alauro v. GC Servs. Ltd. P'ship*,
 168 F.R.D. 451 (E.D.N.Y. 1996) ...............................................................................16

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006)........................................................................................16

*Diaz v. Google LLC*,
 No. 5:21-cv-03080, ECF No. 74 (N.D. Cal. Aug. 4, 2022) ........................................14

*Dupler v. Costco Wholesale Corp.*,
 705 F. Supp. 2d 231 (E.D.N.Y. 2010) .......................................................................14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
 No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .....................11

*In re Experian Data Breach Litig.*,
 No. 8:15-cv-01592 (C.D. Cal.) ...................................................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............8

*Fogarazzao v. Lehman Bros.*,
 232 F.R.D. 176 (S.D.N.Y. 2005) ...............................................................................16

*Gaston, et al., v. FabFitFun,*
No. 2:20-cv-09534-RGK (C.D. Cal.) ........................................................................19

*In re Glob. Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................7, 12

*In re Google LLC St. View Elec. Commc'ns Litig.,*
No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ..............14

*In re Google Plus Profile Litig.,*
No. 5:18-cv-06164-EJD(VKD), 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) .......10

*Gordon v. Chipotle Mexican Grill, Inc.,*
No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .........11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
293 F.R.D. 21 (D. Me. 2013) .................................................................................15

*In re Hi-Crush Partners L.P. Sec. Litig.,*
No. 12-CIV-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................13

*In re IMAX Sec. Litig.,*
283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................8, 9, 12, 14

*In re Initial Pub. Offering Sec. Litig.,*
243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................16

*In re Initial Pub. Offering Securities Litigation.,*
226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................................7

*Koenig, et al. v. Lime Crime, Inc.,*
No. CV 16-503 (C.D. Cal.) .....................................................................................19

*In re LinkedIn User Priv. Litig.,*
309 F.R.D. 573 (N.D. Cal. 2015) .....................................................................10, 18

*Lizondro-Garcia v. Kefi LLC,*
300 F.R.D. 169 (S.D.N.Y. 2014) ...........................................................................19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*
No. 19-MD-2879, 2022 WL 1396522 (D. Md. May 3, 2022) ...............................15

*McDonald, et al. v. Kiloo A/S, et al.,*
No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), ECF No. 406 ..........................14

*McGlenn v. Driveline Retail Merch., Inc.,*
No. 18-cv-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ................................15

*McReynolds v. Richards-Cantave,*
  588 F.3d 790 (2d Cir. 2009)........................................................................7, 9

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................11

*In re Nasdaq Market-Makers Antitrust Litigation.,*
  176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................7

*In re PaineWebber Ltd. P'ships Litig.,*
  171 F.R.D. 104 (S.D.N.Y. 1997) ..........................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
  330 F.R.D. ...........................................................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
  330 F.R.D. 11 (E.D.N.Y. 2019) .........................................................................11

*Perkins v. LinkedIn Corp.,*
  No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)....................10

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
  No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019)........................18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
  237 F.R.D. 26 (E.D.N.Y. 2006) ...................................................................8, 9, 14

*Savino v. Computer Credit, Inc.,*
  173 F.R.D. 346 (E.D.N.Y. 1997) .......................................................................16

*In re Sinus Buster Prods. Consumer Litig.,*
  No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)....................14

*Smith v. Triad of Alabama, LLC,*
  No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017).......................15, 17

*In re Sonic Corp. Customer Data Sec. Breach Litig.,*
  No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .......................11

*Sullivan v. DB Invs., Inc.,*
  667 F.3d 273 (3d Cir. 2011)...............................................................................19

*In re Telik, Inc. Sec. Litig.,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................12

*In re TJX Cos. Retail Sec. Breach Litig.,*
  246 F.R.D. 389 (D. Mass. 2007).........................................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)...........................................................................................17

*In re: Vizio, Inc., Consumer Privacy Litig.*,
No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017).........................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..................................................................7, 9, 18

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)........................................................13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020),
*appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021)......................18

**Statutes**

28 U.S.C. § 1715......................................................................................................19

**Other Authorities**

Federal Rule of Civil Procedure 23 ....................................................... *passim*

Federal Rule of Evidence 408..................................................................................12

# INTRODUCTION

Plaintiffs respectfully request the Court grant preliminary approval of a proposed Settlement Agreement and Release (the "Settlement Agreement"), annexed to the Joint Declaration of James J. Pizzirusso and Jean S. Martin ("Joint Decl.") as **Exhibit 1**,[1] resolving their claims against Defendants Enzo Biochem, Inc. and Enzo Clinical Labs, Inc. (collectively, "Enzo") in the above-captioned litigation.[2]

If approved, the Settlement Agreement will establish a non-reversionary cash fund in the amount of $7.5 million (the "Settlement Fund"),[3] which will be used to (1) make direct cash payments to Settlement Class Members, (2) provide data protection and monitoring services to participating Settlement Class Members, (3) cover Notice and Administrative Expenses, (4) pay any Service Awards to Class Representatives, as approved by the Court, and (5) pay any Attorneys' Fees and Expenses, as approved and awarded by the Court. Over and above the Settlement Fund, Defendant has implemented significant business practice changes and security enhancements (or will implement such) to prevent future data security incidents.

The Settlement Agreement provides substantial relief to the Settlement Class and its terms are well within the range of reasonableness and consistent with applicable law, particularly considering the extensive risks and uncertainties of further, protracted litigation. It is the product of well-informed, arm's-length negotiations, including two mediation sessions, each lasting a full

---

[1] The Settlement Agreement contains six exhibits, A through F, which are attached to the Joint Declaration as exhibits 1-A through 1-F.

[2] Enzo does not oppose the relief sought by this Motion for Preliminary Approval and agrees that the Court should grant preliminary approval and allow notice to issue to the Settlement Class. By not opposing this relief, Enzo does not concede the factual basis for any claim and denies liability. Enzo reserves its right to challenge the alleged facts should the Court deny this Motion for Preliminary Approval, in whole or in part.

[3] Unless otherwise defined, all capitalized terms herein have the same meanings as those defined in Section I of the Settlement Agreement and Release. *See* **Exhibit 1**, ¶¶ 1.1–1.52.

day and facilitated by Mediator Bennett G. Picker of JAMS. The Settlement Agreement is a fair and reasonable result that delivers tangible and immediate benefits to all Settlement Class Members, and therefore merits this Court's preliminary approval.

## BACKGROUND

Enzo is a global life sciences and biotechnology company that provides diagnostic testing services to millions of patients throughout the United States. *See* Joint Declaration of James J. Pizzirusso and Jean S. Martin ("Joint Decl.") ¶ 8. To receive these services, patients provide Enzo with their personally identifiable information, such as names and Social Security numbers, which Enzo collects and stores along with personal health information in patients' medical records, including clinical test results and dates of service (collectively, "Personal Information"). *Id.* ¶ 9.

On or about April 6, 2023, cybercriminals gained access to Enzo's data network and exfiltrated the Personal Information of approximately 2 million individuals (the "Network Incident"). *Id.* ¶ 10. Following investigation, Enzo confirmed the compromised information included patients' names, medical records, and Social Security numbers. *Id.* ¶ 11. Litigation was commenced against Enzo on June 9, 2023. *Id.* ¶ 12. On July 10, 2023, the Court consolidated 18 cases. *Id.* ¶ 13; *see* ECF No. 25. On September 29, 2023, the Court appointed James J. Pizzirusso and Jean S. Martin as Interim Co-Lead Counsel ("Interim Class Counsel"). Joint Decl. ¶ 14; *see* ECF No. 52. On November 13, 2023, Plaintiffs filed the Consolidated Class Action Complaint. Joint Decl. ¶ 15; *see* ECF No. 55 (the "Complaint" or "Compl.").

Plaintiffs allege that Enzo had long known, or had reason to know, their electronic record-keeping systems were prime targets for hackers. Compl. ¶¶ 3, 243, 274–94. Despite that pervasive threat, Enzo failed to take basic, known, and available steps to secure the sensitive information in their custody. *Id.* ¶¶ 295–315. As a direct result of Defendants' failure to implement basic data security safeguards, Plaintiffs' Personal Information is now in the hands of cybercriminals.

Plaintiffs have already suffered real consequences, including actual and attempted misuse of their stolen information. Plaintiffs also face a present, ongoing, and imminent risk of identity theft and other fraudulent activity by criminals seeking to profit from their Personal Information. Plaintiffs have already and will continue to devote significant time, money, and energy to protect themselves from the effects of the Network Incident. Plaintiffs were deprived of the benefit of their bargain because they overpaid Enzo (or Enzo's healthcare partners) for medical services given that their Personal Information was not protected. Plaintiffs' Consolidated Complaint alleges several causes of action under common law and state statutory law. *See* Joint Decl. ¶ 16; *see also id.* ¶ 17.

Throughout 2024, the Parties engaged in extensive, arm's-length settlement negotiations, including two full days of mediation with Mediator Bennett G. Picker of JAMS, with both sides represented by experienced counsel. *See id.* ¶ 18. The first session was held on March 28, 2024. *Id.* ¶ 19. In advance, the Parties prepared and exchanged comprehensive mediation briefs and informal discovery. *Id.* Before any settlement terms were negotiated, Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of Enzo's anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses in this matter. *Id.* The Parties were unable to reach agreement at the March 28 mediation but continued to engage in extensive settlement negotiations over the following months. *Id.* ¶ 20.

After the March 28 mediation, Enzo filed a motion to dismiss on April 8, 2024. *Id.* ¶ 21. The Parties fully and extensively briefed the motion, but it did not cease settlement discussions. *Id.* In the summer of 2024, the Parties exchanged additional information—including pertinent financial information—to facilitate further negotiations. *Id.* ¶ 22. Interim Class Counsel also engaged an expert to assist with the analysis of Enzo's financial records. *Id.*

The Parties held a second full day of mediation with Mr. Picker on September 12, 2024, again with both sides represented by experienced counsel. *Id.* ¶ 23. Near the conclusion of the second day, Mr. Picker—who had reviewed the Complaint, the mediation submissions, and informal discovery the Parties had exchanged, which included information about the Network Incident, numbers of patients affected, and Enzo's financial information—made a proposal of $7.5 million. *Id.* ¶ 24. Both Parties accepted the proposal on or before September 19, 2024. *Id.* ¶ 25.

Interim Class Counsel negotiated with and obtained bids from several well-established, experienced, and highly regarded class action administration firms before selecting Angeion Group. *Id.* ¶ 35. Plaintiffs maximized the amount that would be available to the Settlement Class for payment of claims by minimizing notice and administration costs, while ensuring that the notice and administration plan complied with all rules, guidelines, and due process requirements.

## <u>TERMS OF THE SETTLEMENT</u>

The proposed Settlement Class is defined as:

> [A]ll natural persons who are residents of the United States whose Personal Information was potentially compromised in the Network Incident and were sent via U.S. Mail notice by Enzo that their Personal Information may have been compromised in the Network Incident. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Enzo, its subsidiaries, parent companies, successors, predecessors, and any entity in which Enzo or its parents have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

**Exhibit 1**, ¶ 1.45. The proposed Settlement Class consists of approximately 2 million individuals whose Personal Information was compromised in the Network Incident. Joint Decl. ¶ 27.

The Settlement Agreement provides for a non-reversionary cash fund of $7,500,000.

**Exhibit 1**, ¶¶ 3.1, 3.12. The Settlement Fund will be used to pay: (1) Documented Out-of-Pocket Losses, (2), Pro-Rata Cash Compensation, (3) Medical Shield Premium protection, (4) Notice and

Administrative Expenses, (5) Fees and Expenses, as approved and awarded by the Court, and (6) Service Awards, if any, as approved and awarded by the Court. *Id.* ¶ 3.13. The Settlement is designed to exhaust the Settlement Fund and any residual funds, if economically feasible and practical, will be distributed *pro rata* to Settlement Class Members. *Id.* § 3.9.

The Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement. They may submit claims for compensation for documented out-of-pocket losses incurred as a result of the Network Incident of up to $10,000.00, a cash payment, and two years of data protection and monitoring services. *Id.* ¶ 3.2(a). Regardless of whether they make a claim for out-of-pocket losses, all Settlement Class Members are eligible to make a claim for a cash payment, and pro rata cash payments will evenly distribute the net amount of the Settlement Fund. *Id.* ¶¶ 3.2(b), 3.9. Additionally, Settlement Class Members may claim two year of data protection and monitoring services through Medical Shield Premium. *Id.* ¶ 3.2(c). Participating Settlement Class Members will have the option of receiving Settlement Payments via mailed check or other electronic means made available by the Settlement Administrator. *Id.* ¶ 3.3.

Furthermore, Enzo has agreed to make numerous business practices changes to their data security to prevent future data breaches and protect their customers' Personal Information. *Id.* ¶ 2.1. As a result of Plaintiffs' commencement of this litigation, Enzo has already implemented several improvements to their data security practices and procedures. *See id.*; Joint Decl. ¶ 31. Enzo has agreed to provide additional information regarding the specific changes implemented to Interim Class Counsel upon request. Joint Decl. ¶ 32.

In exchange for the monetary and non-monetary benefits provided under the Settlement Agreement, Settlement Class Members will release any and all claims against Enzo and the

Released Parties arising from or in any way related to the Network Incident at issue in this litigation. *See* **Exhibit 1**, ¶ 4.1. There are no differences between the claims released under the Settlement Agreement and the claims alleged in Plaintiffs' Complaint.

The Parties jointly propose Angeion Group ("Angeion") to serve as Settlement Administrator, subject to the Court's approval. *See* Joint Decl. ¶ 35; *see generally* Joint Decl., **Exhibit 4** (Declaration of Steven Weisbrot of Angeion Group ("Weisbrot Decl.")). Prior to selecting Angeion, the Parties obtained bids from multiple qualified claims administrators. Joint Decl. ¶ 35. Following careful review of the competing bids, counsel determined that Angeion's bid was most favorable to the Class and negotiated with Angeion to secure the current bid price. *Id.* Angeion maintains insurance to cover any errors and has taken necessary precautions to protect Settlement Class Members' Personal Information. Weisbrot Decl. ¶ 17.

Interim Class Counsel will submit a separate motion seeking attorneys' fees, costs, and expenses and service awards for the Plaintiffs prior to the deadline for Settlement Class Members to object to or opt out of the Settlement. **Exhibit 1**, ¶ 9.1; *see also* Joint Decl. ¶¶ 37–38.

**ARGUMENT**

The Settlement Agreement is fair, adequate, and reasonable, particularly in light of the substantial risks and uncertainties of further, protracted litigation of this matter. Accordingly, Plaintiffs request that the Court grant their Motion for Preliminary Approval, order distribution of Notices to the Settlement Class, and set a date and time for a Final Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).

I.      **The Settlement Merits Preliminary Approval**

        A.  **Legal Standard for Preliminary Approval of a Settlement**

There is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re*

*PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also Bano v. Union Carbide Corp.*, 273 F.3d 120, 129–30 (2d Cir. 2001) (collecting cases). That policy exists "to encourage compromise and conserve judicial and private resources." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). Granting preliminary approval is a matter of discretion. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997).

In determining whether to grant preliminary approval to a settlement, the court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, [i.e., substantive fairness].'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). Factors include whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval," *In re Nasdaq Market-Makers Antitrust Litigation.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*"), and grants the plaintiffs repose in the face of complex, uncertain litigation, *In re Initial Pub. Offering Securities Litigation.*, 226 F.R.D. 186, 198 (S.D.N.Y. 2005).

## B. The Settlement Is Procedurally Fair

Where, as here, the proposed settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).[4] This Court has previously concluded that Class Counsel has the requisite skill and

---

[4] "This presumption arises because if the negotiation process is fair 'the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides.'" *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013)). "Further, 'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125)).

experience in class actions to lead this litigation on behalf of the putative Class. *See* ECF No. 52.

Enzo is likewise represented by reputable and highly experienced counsel. The settlement

negotiations were vigorous and involved an accomplished and engaged mediator, who proposed

the $7.5 million settlement amount the Parties mutually accepted. Joint Decl. ¶¶ 18–20, 22–25.

The use of a mediator "strengthen[s]" the presumption that the compromise is fair and reasonable.

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at

*14 (S.D.N.Y. Nov. 8, 2010); *see also Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595

(RLE), 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("The assistance of an experienced

mediator . . . reinforces that the Settlement Agreement is non-collusive."). In short, the Settlement

Agreement is procedurally fair, which merits preliminary approval.

### C. The Settlement Is Substantively Fair

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval

stage, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006);

*Authors Guild v. Google, Inc.*, No. 05 CIV. 8136 (DC), 2009 WL 4434586, at *1 (S.D.N.Y. Dec.

1, 2009), the nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)

confirm the settlement is fair. *See Reade-Alvarez*, 237 F.R.D. at 34. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804. As applied here, the *Grinnell* factors weigh heavily in favor of Preliminary Approval.[5]

### 1. The Settlement Provides Significant Relief Particularly in Light of Best Possible Recovery and the Attendant Risks of Litigation

To start with the final two *Grinnell* factors, the Settlement Agreement provides significant relief for the Settlement Class, particularly in light of potential recovery and the attendant risks of litigation. "[T]here is a range of reasonableness with respect to a settlement . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "'The adequacy of the amount achieved in settlement may not be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 (quoting *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011)). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989)).

Here, the Settlement Agreement creates a non-reversionary Settlement Fund of $7.5 million, a substantial monetary benefit. The size of the Settlement Fund ($7.5 million) relative to

---

[5] The reaction of the class to the settlement cannot be gauged at this juncture prior to the Notice Plan. *See Reade-Alvarez*, 237 F.R.D. at 34 ("Clearly, some of the [] [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.").

the size of the Settlement Class (approximately 2 million Class Members) is near the top of recent

cash settlement funds for data breach litigations, particularly for similarly sized classes.[6]

While Plaintiffs are confident in the strength of their claims and believe the Court would

certify a Class, Enzo's defense—both on the merits and on class certification—would no doubt be

vigorous. It has raised arguments as to its duty to Class Members, as well as negligence and breach

of its duties to Plaintiffs and Class Members. Plaintiffs must acknowledge the risks, including

whether the Court would grant class certification and deny a motion for summary judgment, and

whether a jury would find liability and award damages. *See In re Bear Stearns Companies, Inc.

Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a

given settlement amount is a function of both (1) the size of the amount relative to the best possible

recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

In light of the risks and uncertainties presented by data breach litigation, the $7.5 million

Settlement Fund achieved for the Settlement Class here is well within the range of possible

approval. *See Browning v. Yahoo! Inc.*, No. C04-01463HRL, 2007 WL 4105971, at *10 (N.D. Cal.

Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to

fundamental legal issues—favor approval."). For purposes of settlement negotiations, Interim

Class Counsel estimated the total value of Plaintiffs' claims based on the foregoing analysis,

including a review of previous settlements in similar data breach cases. *See* Joint Decl. ¶ 40. Based

upon this comparison, their knowledge and experience, and an analysis of the facts and law

---

[6] *See, e.g.*, *In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD(VKD), 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (approving $7.5 million settlement for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt, Inc*., No. 14-cv-09600-RGK (C.D. Cal. 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million reversionary) for 435,000 class members in data breach case); *In re LinkedIn User Priv. Litig*., 309 F.R.D. 573, 582 (N.D. Cal. 2015) (approving $1.25 million settlement for approximately 6.4 million LinkedIn users); *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *2, 9 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement with class size of approximately 20.8 million).

applicable to Plaintiffs' claims and Enzo's defenses, Interim Class Counsel believe the Settlement Agreement provides fair, reasonable, and adequate compensation to the Settlement Class.

### 2. The Complexity, Expense, and Likely Duration Litigation

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (quotation omitted). This factor "weighs heavily" in the analysis. *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174.

Here, the Settlement provides this significant relief for the Settlement Class quickly, which is all the more significant given the complexity and risk of not just class action litigation generally, but data breach class actions in particular. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36. "Data breach cases . . . are particularly risky, expensive, and complex." *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019); *accord In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019). Further, "[t]he law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve . . . ." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *32 (N.D. Ga. Mar. 17, 2020); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("*Anthem*") ("Due to the unsettled nature of the legal questions, Plaintiffs would likely have to contend with changing interpretations of procedural and substantive provisions throughout the course of the case.").

In other words, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*"); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 577 (S.D.N.Y. 2008) ("The costs and

duration of . . . conducting merits . . . discovery, conducting expert discovery, litigating a motion for summary judgment, preparing for trial, conducting the trial itself, filing post-trial motions, and pursuing any appeals would vastly exceed the substantial time and money already spent."). The Settlement Class thus faces the risk, expense, and delay of lengthy litigation (including potential appeals even after a successful trial), delaying any recovery for several more years. The Settlement Agreement, by contrast, provides tangible and immediate relief for all Settlement Class Members.

### 3. The Stage of the Proceedings

"The third *Grinnell* factor—'the stage of the proceedings and the amount of discovery completed'—is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Here, the fact that the Parties have engaged in "informal discovery" weighs in favor of the proposed settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176. "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *Id.* (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982)). The threshold is not intended to be "overly burdensome" and "indeed, formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Sec. Litig.*, 283 F.R.D. at 190.

Prior to mediation, Plaintiffs submitted informal discovery requests to Enzo (pursuant to Federal Rule of Evidence 408) requesting detailed information about the Network Incident, including Enzo's investigation and assessment of the Network Incident, and information regarding any remediation or corrective measures Enzo took in response to the Network Incident. Joint Decl. ¶¶ 19, 26, 31. Enzo provided Plaintiffs with detailed information about the Class, including a breakdown by State of notices Enzo sent to individuals impacted by the Network Incident, and a forensic report prepared by a third-party cybersecurity firm that performed an investigation into

the nature, causes, and impacts of the Network Incident. *Id.* ¶ 19. Enzo provided further details about corrective measures and security enhancements implemented in response to the Network Incident and a transcript of communications between Enzo and the threat actor that perpetrated the Network Incident. *Id.* ¶¶ 19, 31.

This work, combined with pre-suit investigation, two formal mediations before a third-party neutral, and extensive mediation briefing provided Interim Class Counsel with significant knowledge to evaluate the strengths and weaknesses of Plaintiffs' claims and the uncertainties of future litigation. *See Anthem*, 327 F.R.D. at 320 ("This exchange of information and progress in the litigation confirm that the parties have a good sense of the strength and weaknesses of their respective cases in order to 'make an informed decision about settlement.'").

### 4. The Risks of Establishing Liability and Damages

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 (CM), 2014 WL 7323417, at *8 (S.D.N.Y. Dec. 19, 2014). Successfully litigating the merits of the case—and proving damages—presents significant risks. This litigation presents the Court and the Parties, and would eventually present a jury, with the task of understanding complex data privacy protocols. This makes proving liability and damages, both of which would have required the assistance of experts, more challenging.[7]

Plaintiffs' risk is amplified as Enzo has significant litigation resources and is represented by one of the best law firms in the United States. Absent settlement, Enzo was prepared to

---

[7] If it proceeded to discovery, summary judgment, and trial, this case would involve a "battle of the experts" at every turn. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985).

vigorously contest its liability and damages.[8] Establishing liability would require "considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). And even if Plaintiffs can establish liability, privacy damages are difficult to assess and many privacy class actions have been settled for non-monetary relief.[9] In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).

### 5. The Risk of Maintaining Class Action Status Through Trial

Finally, although Plaintiffs believe their proposed litigation class would merit certification, Enzo may have vigorously contested their motion for class certification—and Plaintiffs recognize there is no guarantee that a litigation class would be certified. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("While there is no obvious reason to treat certification in a data-breach case differently than certification in other types of cases, the dearth

---

[8] It is possible that Enzo may be able to withstand a larger settlement; however, this factor alone is not reason to reject the Settlement. *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (collecting cases). "Given the circumstances of the case, however, and the fact that all of the other *Grinnell* factors weigh in favor of the Settlement, 'this factor alone does not suggest the settlement is unfair.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010) (quoting *D'Amato*, 236 F.3d at 86). After all, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. at 191. Another factor, the reaction of the class to the settlement, cannot be gauged at this juncture prior to the Notice Plan. *See Reade-Alvarez*, 237 F.R.D. at 34 ("Clearly, some of the[] [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.").

[9] *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (approving declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *Diaz v. Google LLC*, No. 5:21-cv-03080, ECF No. 74 (N.D. Cal. Aug. 4, 2022) (seeking final approval of non-monetary settlement of claims that Google exposed private information through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.,* No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), ECF No. 406 (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling private information of children).

of precedent makes continued litigation more risky.").[10] And a district court's order granting class certification under Federal Rule of Civil Procedure 23 is "inherently tentative" and "subject to revision," and Enzo could move for de-certification at any time before trial. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978); *accord Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 (JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010). A denial or reversal of class certification would effectively extinguish any hope of recovery by the Settlement Class.

## II.     Certification of the Settlement Class Is Appropriate

The Parties have agreed, for the purposes of the Settlement only, to the certification of the Settlement Class. Parties seeking class certification for settlement purposes must satisfy the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("*Amchem*"). The requirements of Rules 23(a) and (b)(3) are satisfied here.

### A.     Rule 23(a) Is Satisfied

Certification under Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Settlement Class; and (4) the representative parties will fairly and adequately protect the interests of the Settlement Class. Fed. R. Civ. P. 23(a).

***Numerosity.*** Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "[N]umbers in excess of forty generally satisfy the numerosity

---

[10] Courts have reached different decisions as to whether to grant class certification in data breach cases. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), and *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097, 2021 WL 165121, at *10 (C.D. Ill. Jan. 19, 2021) (same), *with Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017) (granting certification), *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2022 WL 1396522, at *33–35 (D. Md. May 3, 2022) (certifying certain statewide classes; Rule 23(f) appeal granted), and *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021) (certifying statewide class with respect to California Unfair Competition Law claims).

requirement." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007). Here, the Settlement Class consists of more than 2 million members. Joint Decl. ¶ 47.

**Commonality.** Rule 23(a)(2) requires "questions of law or fact common to the class." A single common question is sufficient. *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 351 (E.D.N.Y. 1997). "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (quotation omitted). This requirement is satisfied because there are "several questions that are common to the class and capable of classwide resolution." *See Brinker*, 2021 WL 1405508, at *8 (certifying class in data breach case because of common questions regarding liability).

**Typicality.** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." It "is satisfied 'when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *D'Alauro*, 168 F.R.D. at 456 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). It "is not demanding." *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Typicality is satisfied here. *See Brinker*, 2021 WL 1405508, at *8 (typicality met where "all Plaintiffs' injuries arise out of the same series of events, the Data Breach").

**Adequacy.** Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." The analysis of whether a class representative is adequate "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the Settlement Class have the same interest in the relief afforded by the Settlement, and the absent members of

the Settlement Class have no diverging interests. Joint Decl. ¶ 50. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *Id*. Class Counsel has devoted substantial time and resources to this case and will vigorously protect the interests of the Settlement Class. *Id*.

### B. Rule 23(b)(3) Certification Requirements Are Satisfied

In addition to meeting the conditions imposed by Rule 23(a), certification is appropriate under Rule 23(b)(3), which permits certification of a damages class if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods."

First, Plaintiffs' claims depend on whether Enzo used reasonable data security measures—a question that can be resolved using the same evidence for all Settlement Class Members—and thus Plaintiffs' claims predominate over any individual issues. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]"); *see also Brinker*, 2021 WL 1405508, at *14; *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017) (certifying negligence class in data-breach suit), *aff'd on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017).

Second, this Class Settlement is also the superior method of adjudicating consumer claims arising from this Network Incident because it promotes consistency and efficiency of adjudication—just as in other data breach cases where class-wide settlements have been routinely approved.[11]

---

[11] *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *6-7 (N.D. Cal. July 22, 2020), *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *In re Premera*

### III. The Court Should Approve the Proposed Notice Plan

"The court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005). Adequate notice is notice that "may be understood by the average class member." *Id.* at 114.

> Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it 'describe[s] the terms of the settlement generally', 'inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing.'

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 58–59.

The proposed Notice Plan satisfies these content requirements. The Notice will properly inform members of the Settlement Class of the Settlement's substantive terms, their options for opting-out of or objecting to the Settlement, how to obtain additional information about the Settlement, and the time, date, and place of the final approval hearing.[12] *See* Joint Decl. ¶ 33; Fed. R. Civ. P. 23(c)(2)(B); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 181 (S.D.N.Y. 2014). The Notice Plan is designed to reach a high percentage of the Settlement Class by sending direct mail notices to Settlement Class members and exceeds the requirements of constitutional due process.[13]

---

*Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *12-13 (D. Or. July 29, 2019); *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3872788, at *11 (N.D. Cal. Aug. 15, 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

[12] Plaintiffs respectfully submit that the proposed schedule for the Final Approval Hearing (*see* Joint Decl. ¶ 51) complies with Rule 23 and CAFA, while securing recovery for Settlement Class Members in a timely fashion.

[13] The reach will be further enhanced by the Settlement Website and toll-free telephone support. Weisbrot Decl. ¶¶ 23–25. Interim Class Counsel estimates a claims rate of approximately 2% to 5%, based on the realized claims rates of recent data breach class actions, including *Cochran et al. v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.) (claims

Joint Decl. ¶ 33; Weisbrot Decl. ¶¶ 21–22. Therefore, the Court should approve the Notice Plan and the form and content of the Notices attached as **Exhibit 1-D** (Long Form Notice) and **Exhibit 1-F** (Summary Notice) to the Joint Declaration.[14]

## IV. The Court Should Appoint the Named Plaintiffs as Class Representatives and Appoint Interim Class Counsel as Class Counsel for the Settlement Class

The Settlement Agreement would not have been possible had Plaintiffs not stepped forward to represent the interests of the Settlement Class. *See* Joint Decl. ¶ 36. Likewise, Interim Class Counsel are highly qualified and experienced in data breach class actions and have "fairly and adequately represent[ed] the interests of the class," including by diligently investigating Plaintiffs' claims, vigorously litigating on Plaintiffs' and the Class's behalf, devoting substantial time and resources to this litigation. *See* Fed. R. Civ. P. 23(g)(1)(A), (B); Joint Decl. ¶ 50; ECF No. 52. Plaintiffs respectfully submit that Interim Class Counsel should be appointed Class Counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

## V. Proposed Schedule for Final Fairness Hearing

Finally, Plaintiffs propose the following schedule for a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to amended Rule 23(e)(2):

---

rate of 2.1%); *Gaston, et al., v. FabFitFun*, No. 2:20-cv-09534-RGK (C.D. Cal.) (claims rate of 5.3%); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.) (claims rate of 2.9%); *Koenig, et al. v. Lime Crime, Inc.*, No. CV 16-503 (C.D. Cal.) (claims rate of 2.87%); *Adlouni v. UCLA Health Systems Auxiliary*, BC589243 (Cal. Super. Ct.) (claims rate of 2.4%); *Atkinson et al. v. Minted, Inc.*, No. 3:20-cv-03869 (N.D. Cal.) (claims rate of 3.5%); *see also Choi v. Mario Badescu Skin Care, Inc.*, (2016) 248 Cal. App. 4th 292, 297 (noting "the typical consumer class action claim-rate of 5 percent"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (noting claims rates in consumer class settlements "rarely" exceed 7%). *See* Joint Decl. ¶ 34.

[14] CAFA requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). Enzo has already served the CAFA Notice, along with a CD containing the documents described in Section 1715(b).

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing and/or emailing of Notice (the "Notice Date") | Within 45 calendar days after entry of Preliminary Approval Order |
| Deadline to file Class Counsel's application for an award of attorneys' fees and expenses and for Service Awards for Plaintiffs | No later than 14 calendar days prior to the Objection Deadline |
| Deadline for submission of objections or exclusion (opt-out) requests | Within 60 calendar days after the Notice Date |
| Deadline to file Motion for Final Approval and response to any Objections to the Settlement | No later than 14 calendar days after the Objection Deadline |
| Final Approval Hearing | No earlier than 120 days after the entry of the Preliminary Approval Order |
| Deadline for submission of Claim Forms | No later than 90 calendar days after the Notice Date |

Plaintiffs respectfully submit that this proposed schedule complies with Rule 23 and CAFA, while securing recovery for the Settlement Class Members in a timely fashion.

<u>**CONCLUSION**</u>

Plaintiffs respectfully request that this Court grant their Motion for Preliminary Approval and enter an order substantially in the form of their Proposed Notice Order, which is annexed as **Exhibit E** to the Settlement Agreement (**Exhibit 1**).

Dated: January 14, 2025

Respectfully submitted by,

/s/ James J. Pizzirusso
James J. Pizzirusso
**Hausfeld LLP**
888 16th St. NW, Suite 300
Washington, DC 20006
T: 202.540.7200
jpizzirusso@hausfeld.com


/s/ Jean S. Martin
Jean S. Martin
**Morgan & Morgan Complex
Litigation Group**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
T: 813.559.4908
jeanmartin@forthepeople.com

***Interim Co-Lead Counsel***