UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ENZO BIOCHEM DATA SECURITY LITIGATION<br><br>This Document Relates To: *All Cases* | Lead Case No. 2:23-cv-04282-GRB-AYS<br><br>Hon. Gary R. Brown |

**JOINT DECLARATION OF CLASS COUNSEL
JAMES PIZZIRUSSO AND JEAN MARTIN IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

We, James Pizzirusso and Jean Martin, jointly declare as follows:

1. We have been appointed by the Court as Interim Co-Lead Counsel for Plaintiffs[1] and the proposed Class in the above-captioned matter. *See* ECF No. 52. We submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

2. After several rounds of arms-length negotiations and settlement discussions, including two full-day mediation sessions with mediator Bennett G. Picker of JAMS, Plaintiffs (through Interim Class Counsel) and Enzo entered into a Settlement Agreement in this matter. The Parties entered into the Settlement Agreement and Releases, a true and correct copy of which is attached as **Exhibit 1**.[2]

3. The firm resume of Hausfeld LLP is attached as **Exhibit 2** to this declaration.

---

[1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.
[2] There are six exhibits to the Settlement Agreement (Exhibit 1)—Exhibits A through F—which are attached hereto as Exhibits 1-A through 1-F.

1

4. The firm resume of Morgan & Morgan is attached as **Exhibit 3** to this declaration.

5. As can be seen from the attached resumes, Interim Co-Lead Counsel have substantial experience in the litigation, certification, trial, and settlement of nationwide class actions, specifically in the data breach litigation context. Based on our experience, Enzo's Counsel are also highly experienced in this type of litigation. It is thus our considered opinion that counsel for each side has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe that the proposed Settlement Agreement fairly resolves their respective differences.

6. Prior to filing, Interim Co-Lead Counsel spent many hours investigating the claims of several potential plaintiffs against Enzo. Interim Co-Lead Counsel interviewed numerous Enzo patients to gather and evaluate information about Enzo's alleged conduct and its impact upon consumers. This information was essential to our ability to understand Enzo's conduct, the merits of Plaintiffs' claims, Plaintiffs' potential remedies, and Enzo's potential defenses.

7. Interim Co-Lead Counsel expended significant resources researching and developing the legal claims here. Indeed, Interim Co-Lead Counsel is familiar with the instant claims through their extensive history of litigating and resolving other data breach claims with similar factual and legal issues to the present case. Interim Co-Lead Counsel has experience in assessing the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Settlement Class Member's respective damages.

8. As the Motion's background section summarizes, Enzo is a global life sciences and biotechnology company that provides diagnostic testing services to millions of patients throughout the United States. *See* Complaint, ECF No. 55 (Compl.), ¶¶ 224–25; *see also* Enzo Biochem, Company Profile, https://ir.enzo.com/company-information (last accessed December 30, 2024);

Enzo Biochem, About Us, https://www.enzo.com/corporate/about-us (last accessed December 30, 2024).

9. To receive these services, patients provide Enzo with their personally identifiable information, including names and Social Security numbers, which Enzo collects and stores along with personal health information in patients' medical records, including clinical test results and dates of service (collectively, "Private Information"). Compl. ¶¶ 3, 5, 224–29.

10. On or about April 6, 2023, cybercriminals gained access to Enzo's corporate network and exfiltrated the Private Information of approximately 2 million individuals (the "Data Breach"). *Id.* ¶¶ 1, 3, 234–36.

11. Following investigation, Enzo confirmed the compromised information included patients' names, medical records, and Social Security numbers. *Id.* ¶¶ 234–36.

12. Litigation was commenced against Enzo on June 9, 2023.

13. On July 10, 2023, the Court consolidated 18 cases against Enzo. *See* ECF No. 25.

14. On September 29, 2023, the Court appointed James J. Pizzirusso and Jean S. Martin as Interim Co-Lead Counsel. *See* ECF No. 52.

15. On November 13, 2023, Plaintiffs filed the Consolidated Class Action Complaint. *See* ECF No. 55. Plaintiffs alleged that Enzo had long known, or had reason to know, its electronic record-keeping systems were prime targets for hackers. Compl. ¶¶ 3, 243, 274–94. Despite that pervasive threat, Enzo failed to take basic, known, and available steps to secure the sensitive information in its custody. *Id.* ¶¶ 295–315. As a direct result of Defendant's failure to implement basic data security safeguards, Plaintiffs' Private Information is now in the hands of cybercriminals. Plaintiffs have already suffered real consequences, including actual and attempted misuse of their stolen information. Plaintiffs also face a present, ongoing, and imminent risk of

identity theft and other fraudulent activity by criminals seeking to profit from their Private Information. Plaintiffs have already and will continue to devote significant time, money, and energy to protect themselves from the effects of the Data Breach. Plaintiffs were deprived of the benefit of their bargain because they overpaid Enzo (or Enzo's healthcare partners) for medical services given that their Private Information was not protected.

16. The Complaint alleges several causes of action, including: (1) negligence; (2) gross negligence; (3) breach of contract; (4) breach of contracts in which Plaintiffs were third-party beneficiaries; (5) breach of implied contract; (6) unjust enrichment; (7) breach of bailment; (8) breach of fiduciary duty; (9) breach of confidence; (10) breach of implied covenant of good faith and fair dealing (11) violation of the New York Deceptive Trade Practices Act (N.Y. General Business Law § 349); (12) violation of the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, *et seq.*); (13) violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §§ 42-110a); (14) violation of the California Consumer Privacy Act (Cal. Civ. Code § 1798.150); (15) violation of the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*); (16) violation of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); (17) violation of Article I, § 1 of the California Constitution; (18) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*); (19) violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93a, §§ 1, *et seq.*); (20) violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201, et seq.); and (21) declaratory and injunctive relief.

17. Plaintiffs voluntarily dismissed four counts: negligence per se, invasion of privacy, right to privacy under the New York Constitution, and violation of the California Customer Records Act.

18. Throughout 2024, the Parties engaged in extensive, arm's-length settlement negotiations, and discussed attending mediation. Over the course of 2024, the Parties completed two full days of mediation with Mediator Bennett G. Picker of JAMS, with both sides represented by experienced counsel.

19. The first session before Mr. Picker was held on March 28, 2024. In advance of the mediation session, the Parties prepared and exchanged comprehensive mediation briefs and informal discovery. Enzo provided Plaintiffs with detailed information about the Class, including a breakdown by State of notices Enzo sent to individuals impacted by the Data Breach, and a forensic report prepared by a third-party cybersecurity firm that performed an investigation into the nature, causes, and impacts of the Data Breach. Before any settlement terms were negotiated, Plaintiffs and proposed Class Counsel had a thorough understanding of the composition of the Settlement Class, the nature of Enzo's anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses in this matter.

20. The Parties were unable to reach agreement at the March 28 mediation but continued to engage in extensive settlement negotiations over the following months.

21. After the March 28 mediation, Enzo filed a motion to dismiss on April 8, 2024. Interim Co-Lead Counsel briefed Enzo's Motion to Dismiss, and this litigation settled before the Court decided Enzo's Motion to Dismiss.

22. In the summer of 2024, the Parties exchanged additional information—including pertinent financial information—to facilitate further settlement negotiations. Interim Class Counsel also engaged an expert to assist with the analysis of Enzo's financial records.

23. The Parties then held a second full day of mediation with Mr. Picker on September 12, 2024, again with both sides represented by experienced counsel.

24. Near the conclusion of the second day, Mr. Picker—who had reviewed the Complaint, the mediation submissions, and informal discovery the Parties had exchanged, which included information about the Data Breach, numbers of patients affected, and Enzo's financial information—made a mediator's proposal of $7.5 million.

25. Both Parties accepted the proposal on or before September 19, 2024.

26. In sum, before agreeing to the Settlement, Interim Co-Lead Counsel spent significant time communicating with the Plaintiffs, investigating facts, researching the law, preparing a well-pled Complaint, opposing Enzo's Motion to Dismiss, conducting informal discovery as part of preparing for mediation, preparing and exchanging pre-mediation statements, working with an expert to analyze Enzo's financial viability, and mediating the case to reach settlement.

27. The Settlement Class comprises approximately 2 million individuals whose Private Information was compromised in the Data Breach.

28. Consistent with their notice requirements, Enzo confirmed to Plaintiffs and Interim Co-Lead Counsel that they have already notified individuals whose Private Information was impacted by the Data Breach.

29. The $7.5 million dollar Settlement Fund provides an exceedingly fair and reasonable recovery without the further risk attendant to litigation. For example, on liability and damages there was a distinct possibility that the court or a jury could find in Enzo's favor on these issues. Interim Co-Lead Counsel considered the possibility that this Court could deny class certification. Interim Co-Lead Counsel also considered the amount of the Settlement in comparison

to a number of other similar data breach settlements around the country and found it to be in line with those settlements. Indeed, it is larger than many of them on a per capita basis. Finally, in reaching the conclusion that the Settlement Fund in this Action is adequate, Interim Co-Lead Counsel also considered that the Settlement Class is receiving real money without having to wait years for a trial and potential appeals.

30. The size of the Settlement Fund ($7.5 million) in relation to the size of the Settlement Class (approximately 2 million Class Members) compares favorably to other class action settlements alleging violations of privacy and security. *See, e.g.*, *In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD-VKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (approving $7.5 million settlement for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt, Inc.*, No. 14-cv-09600-RGK (C.D. Cal. 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million reversionary) for 435,000 class members in data breach case); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (approving $1.25 million settlement for approximately 6.4 million LinkedIn users); *Perkins v. LinkedIn Corp.*, 2016 WL 613255, at *2, 9 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement with class size of approximately 20.8 million).

31. As a result of Plaintiffs' commencement of this litigation, Enzo has already implemented several improvements to their data security practices and procedures.

32. Enzo has agreed to provide additional information regarding the specific changes implemented to Interim Co-Lead Counsel upon request.

33. With the Court's approval, the Settlement Administrator will oversee the Notice Program and Settlement Administration. The Notice Program is designed to provide the best notice practicable and is tailored to take advantage of the information Enzo has available about the victims in the Settlement Class. The Notice Program is designed to reach a high percentage of the Settlement Class by sending direct mail notices to the Settlement Class and exceeds the requirements of constitutional due process. The Notice Program is reasonably calculated to apprise the Settlement Class of a description of the material terms of the Settlement; a deadline by which Settlement Class Members may opt-out of the Settlement Class; a deadline by which Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Award; the Final Approval Hearing, location, date, and time; and the Settlement Website address at which the Settlement Class Members may access this Agreement and other related documents and information. The Notices and Notice Program are sufficient notice to all persons entitled to notice and satisfies all applicable requirements of law, including, but not limited to, Fed. R. Civ. P. 23 and constitutional due process.

34. Interim Co-Lead Counsel estimates a claims rate of approximately 2% to 5%, based on the realized claims rates of recent data breach class actions, including *Cochran et al. v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.) (claims rate of 2.1%); *Gaston, et al., v. FabFitFun*, No. 2:20-cv-09534-RGK (C.D. Cal.) (claims rate of 5.3%); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.) (claims rate of 2.9%); *Koenig, et al. v. Lime Crime, Inc.*, No. CV 16-503 (C.D. Cal.) (claims rate of 2.87%); *Adlouni v. UCLA Health Systems Auxiliary*, BC589243 (Cal. Super. Ct.) (claims rate of 2.4%); *Atkinson et al. v. Minted, Inc.*, No. 3:20-cv-03869 (N.D. Cal.) (claims rate of 3.5%); *see also Choi v. Mario Badescu Skin Care, Inc.*, (2016) 248 Cal. App. 4th 292, 297 (noting "the typical consumer class action claim-rate of 5 percent"); *Sullivan v. DB*

*Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (noting claims rates in consumer class settlements "rarely" exceed 7%).

35. The Parties jointly propose Angeion Group ("Angeion") to serve as Settlement Administrator, subject to the Court's approval. *See generally* Declaration of Steven Weisbrot of Angeion Group, attached hereto as **Exhibit 4**. Interim Class Counsel entertained competing bids from multiple qualified settlement administration companies before the Parties selected Angeion Group as the Settlement Administrator. Plaintiffs determined that Angeion's was the most favorable to the Class and negotiated with Angeion to secure a competitive price for administration costs and to create a notice and claims process that will facilitate a favorable claims rate.

36. As part of the Settlement, Enzo has agreed not to oppose Plaintiffs' request for a Service Award for the Class Representative of up to $1,500.00, which will be formally requested when Final Approval of the Settlement is sought. The Service Award will compensate the Class Representatives for their time and effort and the risks they assumed in prosecuting the Action. Specifically, Plaintiffs provided assistance that enabled proposed Class Counsel to successfully prosecute the Action and reach the Settlement, including but not limited to: (1) locating and forwarding documents and information to Class Counsel; (2) participating in conferences with Class Counsel; and (3) reviewing the proposed Settlement with proposed Class Counsel and discussing its terms. In so doing, Plaintiffs were integral to the case. Indeed, they were the catalyst for this entire Action and without their service to the Settlement Class, it would not have been successful.

37. Under the Agreement, Interim Co-Lead Counsel, who request appointment as Settlement Class Counsel (hereinafter "Proposed Settlement Class Counsel"), are entitled to petition the Court for attorneys' fees, as well as reimbursement of litigation costs incurred in

connection with the Action. Proposed Settlement Class Counsel will formally and separately file a motion for attorneys' fees, costs, and expenses, and service awards for the Plaintiffs prior to the date for Settlement Class Members to object to or request exclusion from the Settlement. Proposed Settlement Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses. The Parties did not discuss attorneys' fees and costs or any potential Service Award until they first agreed on the material terms of the Settlement, including the Settlement Class definition, Notice Program, Settlement Class benefits, and scope of relief. Any attorneys' fees and costs to Proposed Settlement Class Counsel remain subject to this Court's approval and will compensate for the time, risk, and expenses incurred pursuing claims on Settlement Class Members' behalf.

38. Proposed Settlement Class Counsel's maximum expense figure is based on their current expenses and estimates of future expenses that will be incurred between the filing of the present Motion and the filing of Proposed Settlement Class Counsel's application for an award of attorneys' fees and expenses.

39. The Settlement in this case is the product of intensive, arm's-length negotiations over multiple mediation sessions between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action after two mediations.

40. The Parties' negotiations were principled, with each side basing their offers and counteroffers on an analysis and review of pre-mediation discovery documents provided by Enzo, and an assessment of the potential recovery available at trial, as well as a review of previous settlements in similar data breach cases. In addition, the negotiations were based on the Parties' respective assessments of the strengths and weaknesses of their positions, and interpretations of the law relative to those positions. Plaintiffs believe the claims asserted are meritorious and that

they would prevail if this matter proceeded to trial. Enzo argues Plaintiffs' claims are unfounded, denies any potential liability, and, up to the point of settlement, has indicated a willingness to litigate those claims vigorously. Plaintiffs' ultimate success would require them to prevail, in whole or in part, at class certification, summary judgment, trial, and appeal. Conversely, Enzo's success at any of these steps could or would have spelled defeat for Plaintiffs and the Settlement Class. The Parties concluded that the settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with further contested class-certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Otherwise, had they proceeded to obtain a ruling on class certification and later proceeded to trial, the Parties would have expended significant resources.

41. Based on our investigation into this case and experience with and knowledge of the law and procedure governing the claims of Plaintiffs and the Settlement Class, it is our belief that it is in the best interests of the Settlement Class to enter into this Settlement. Indeed, in light of the risks, uncertainties, and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to Settlement Class Members in the form of direct cash compensation.

42. The dispute centers on Enzo's alleged failure to maintain the security of Plaintiffs and the Settlement Class Members' Private Information. With this Settlement, Plaintiffs have achieved their desired goal of compensating Settlement Class Members whose Private Information was compromised during the Data Breach. Notably, during the course of this litigation, Enzo made certain data security improvements, and arguably this Action case was a catalyst for those

fundamental business changes as well. While Plaintiffs' best-case may represent a higher measure of damages, there was a substantial risk that Plaintiffs would not achieve such a result.

43. Prior to settlement, Enzo made non-frivolous arguments with respect to its anticipated defenses. While Plaintiffs certainly disagree with Enzo's arguments, Enzo has raised potentially plausible defenses that could threaten the viability of the Action. Among other things, Enzo contended that it would prevail on its motion to dismiss (or a motion for summary judgment) because, in its view, Plaintiffs were not sufficiently injured in the Data Breach or else because Enzo did not breach any duty it owed to Plaintiffs or because any breach did not cause Plaintiffs' injuries. Likewise, Enzo argued that Plaintiffs could not certify a class under Rule 23(b)(3) because individualized issues regarding causation and damages predominated over common issues of law and fact. Although Plaintiffs believes they have strong arguments on the merits of these issues, it is possible that the Court would have agreed with one or more of Enzo's arguments, defeating Plaintiffs' claims.

44. We are confident in the strength of Plaintiffs' case with respect both to legal arguments as well as the discoverable facts, but we are also pragmatic regarding the risks in continuing this Litigation, including the possibility that the Court would deny class certification and/or grant summary judgment, or that Plaintiffs and the Class could not prevail at trial. Enzo continues to dispute, for example, that it breached it any duty owed to the Plaintiffs and the Settlement Class Members. In this context, the amount of the Net Settlement Fund to be distributed automatically to Settlement Class Members will be an excellent recovery.

45. The success of Plaintiffs' claims in this litigation turns on these and other questions certain to arise in the context of motions for summary judgment and at trial, as they have in other similar cases. Each of these risks, by itself, could easily have impeded Plaintiffs' and the class's

successful prosecution of these claims at trial and in an eventual appeal. Under the circumstances, Plaintiffs and proposed Class Counsel appropriately determined the Settlement reached with Enzo outweighs the gamble of continued litigation. This Settlement Agreement provides substantial relief to Settlement Class Members without further delay, eliminating a substantial risk that class members could receive nothing at all.

46. Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed by an appeal. Thus, even in the best case, it could take years to get relief for class members. The Settlement provides substantial relief to the Settlement Class without further delay.

47. Numerosity is satisfied because the Parties expect there to be more than 2 million Settlement Class Members, such that joinder of all such persons is impracticable.

48. Liability questions common to all members in the Settlement Class substantially outweigh any possible issues that are individual to each Settlement Class member, thus satisfying commonality and predominance. There are multiple questions of law and fact, including but not limited to Enzo's failure to maintain the security of Plaintiffs' and Settlement Class Members' Private Information. The relationship of each Settlement Class Member arises from a common incident: the Data Breach. Those common questions generate common answers central to the viability of the claims were the Action to proceed to trial.

49. Plaintiffs' claims are typical of absent class members in the Settlement Class because they stem from the same Data Breach, in which Plaintiffs and the absent Settlement Class Members suffered from the same injuries, and Plaintiffs and the Settlement Class Members will benefit from the relief provided by the Settlement.

50. Plaintiff's interests are coextensive with—not antagonistic to—the interests of the Settlement Class because Plaintiffs and the Settlement Class Members have the same interest in

the relief the Settlement Agreement affords, and the Settlement Class Members have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including data breach class actions similar to the instant case. Proposed Settlement Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class.

51. Finally, Plaintiffs propose the following schedule for a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to amended Rule 23(e)(2):

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing and/or emailing of Notice (the "Notice Date") | Within 45 calendar days after entry of Preliminary Approval Order |
| Deadline to file Class Counsel's application for an award of attorneys' fees and expenses and for Service Awards for Plaintiffs | No later than 14 calendar days prior to the Objection Deadline |
| Deadline for submission of objections or exclusion requests ("Objection Deadline") | Within 60 calendar days after the Notice Date |
| Deadline to file Motion for Final Approval and response to any Objections to the Settlement | No later than 14 calendar days after the Objection Deadline |
| Final Approval Hearing | No earlier than 120 days after the entry of the Preliminary Approval Order |
| Deadline for submission of Claim Forms | No later than 90 calendar days after the Notice Date |

52. Plaintiffs respectfully submit that this proposed schedule complies with Rule 23 and CAFA, while securing recovery for Settlement Class Members in a timely fashion.

I declare under penalty of perjury that the foregoing is true of my own personal knowledge. Executed in Tampa Bay, Florida this 14th day of January, 2025.

*/s/ Jean S. Martin*
Jean S. Martin

I declare under penalty of perjury that the foregoing is true of my own personal knowledge. Executed in Washington, D.C. this 14th day of January, 2025.

*/s/ James J. Pizzirusso*
James J. Pizzirusso